UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JONATHAN LOPEZ,

       Plaintiff,

v.                                            Case No. 3:22-cv-653-BJD-MCR

SERGEANT WALDO GARCIA,

       Defendant.
_____

## ORDER

### I. Status

Plaintiff, Jonathan Lopez, an inmate of the Florida Department of Corrections, is proceeding *pro se* and *in forma pauperis* on a Third Amended Complaint for the violation of civil rights under 42 U.S.C. § 1983 (Doc. 37; Compl.). The sole Defendant, Waldo Garcia, moves to dismiss the complaint (Doc. 47; Def. Mot.). Plaintiff opposes the motion (Doc. 49; Pl. Resp.).

In his complaint, Plaintiff alleges Defendant Garcia, a Sergeant at New River Correctional Institution (NRCI), "unlock[ed] his cell door allowing inmate Korey Gunn to assault and stab him several times in the arm and buttocks area." Compl. at 6 (internal punctuation omitted). He asserts, "[Defendant] Garcia could anticipate . . . [the] attack before it unfolded" because corrections staff knew of Inmate Gunn's "history of serious

disciplinary infractions" and "violent past." *Id.* at 6–7. Plaintiff claims Defendant Garcia violated his rights under the Eighth Amendment (failure to protect and deliberate indifference). *Id.* It appears Plaintiff also alleges Defendant Garcia violated prison policy by opening his cell door without "having a second officer [present]." *Id.* at 7. According to Plaintiff, had Defendant Garcia opened his cell door in compliance with relevant prison policy, the second officer could have prevented the attack by Inmate Gunn. *Id.*

The incident occurred on March 19, 2021. *Id.* at 4. According to medical records Plaintiff filed with his complaint, a nurse examined him on March 23, 2021, cleansed four "laceration[s]," applied bacitracin, and gave him a "TDAP vaccine per protocol." *Id.* at 15–18. No further treatment was warranted. *Id.* at 17. In a grievance Plaintiff filed on March 30, 2021, he noted that he was in the "step-down" program, preparing to return to open population from having been on close management (CM) status at Florida State Prison. *Id.* at 20. He complained that Inmate Gunn was housed on the upper level of the dorm, and he was housed on the lower level, and inmates on different levels were not to be out of their cells "at the same time" unless they were "run arounds [inmate orderlies] who fed breakfast," which Inmate Gunn was not. *Id.* at 20–21. He attributed the attack to "[a] lack of security and . . . total disregard for [his]

2

safety" and Defendant Garcia's "direct violation of the institutional operation procedures" regarding "electronically open[ing]" inmates' cell doors. *Id.* at 21.

## II. Motion to Dismiss Standard

A defendant may move to dismiss a complaint for a plaintiff's "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). In ruling on such a motion, the court must accept the plaintiff's allegations as true, liberally construing those by a plaintiff proceeding *pro se*, but need not accept as true legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).[1] Though detailed factual allegations are not required, Rule 8(a) demands "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* A plaintiff should allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting the plaintiff's claims. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

## III. Motion & Analysis

Defendant Garcia argues Plaintiff fails to state a plausible Eighth Amendment claim because Plaintiff does not allege he (Garcia) "had actual

---

[1] Generally, a court must consider only the allegations in the complaint when ruling on a motion to dismiss. *See* Fed. R. Civ. P. 12(d). However, a court may consider extrinsic evidence when ruling on a Rule 12(b)(6) motion if a document incorporated by reference in the complaint "is (1) central to the plaintiff's claim and (2) undisputed." *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) (citing *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002)).

knowledge of any potential danger," but rather alleges only that he should have anticipated Inmate Gunn's attack based on Gunn's violent past. *See* Def. Mot. at 7. Defendant Garcia invokes qualified immunity and moves to strike Plaintiff's requests for injunctive relief and punitive damages. *Id.* at 10–13.

In his response, Plaintiff argues he sufficiently alleges an Eighth Amendment violation because he "clearly states [Defendant] Garcia was in direct violation of the institutional operational procedures when he electronically opened [Plaintiff's] cell door." *See* Pl. Resp. at 1. Plaintiff further claims, "[T]here should be no dispute that employees at [NRCI] are aware that [CM] inmates are sent to CMU [the close management unit] for bad behavior …. In other words, Defendant should've been aware from his experience of working on a CMU that any potential danger can transpire at any time." *Id.* at 2. He claims that, had Defendant Garcia followed proper protocol and "had two officers present" when Defendant Garcia remotely opened his cell door, "the incident would not have occurred." *Id.* at 3.

Prison officials sued in their individual capacities are "entitled to qualified immunity for [their] discretionary actions unless [they] violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Black v. Wigington*, 811 F.3d 1259, 1266 (11th Cir. 2016) (quoting *Case v. Eslinger*, 555 F.3d 1317, 1325 (11th Cir. 2009)).

Qualified immunity allows government employees to exercise their official duties without fear of facing personal liability. *Alcocer v. Mills*, 906 F.3d 944, 951 (11th Cir. 2018). The doctrine protects all but the plainly incompetent or those who knowingly violate an inmate's constitutional rights. *Id.* If a prison official makes a decision that is later found to be constitutionally deficient, the official is entitled to qualified immunity if the decision was based on a reasonable misapprehension of the law. *Taylor v. Riojas*, 592 U.S. 7, 8 (2020) (citing *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004)).

Upon invoking qualified immunity, a defendant bears the initial burden to demonstrate he was performing discretionary duties at the relevant times. *Alcocer*, 906 F.3d at 951. Plaintiff does not dispute that Defendant Garcia was acting within the scope of his discretionary duties when the incident occurred. *See* Pl. Resp. at 3. As such, the burden shifts to Plaintiff, who must point to facts that, accepted as true, demonstrate Defendant Garcia violated a constitutional right.

First, to the extent Plaintiff premises his claim solely upon Defendant Garcia's alleged violation of institutional operational procedures, he fails to state a plausible claim under 42 U.S.C. § 1983. To state a claim under § 1983, a plaintiff must allege that a person acting under the color of state law deprived him of a right secured under the United States Constitution or federal law. *See*

5

42 U.S.C. § 1983. "[T]he procedural requirements set out in [a state] regulation are not themselves constitutional mandates." *Magluta v. Samples*, 375 F.3d 1269, 1279 n.7 (11th Cir. 2004); *see also Sandin v. Conner*, 515 U.S. 472, 481–82 (1995) (holding prison regulations are not intended to confer rights or benefits on inmates but are designed to guide correctional officials in the administration of prisons); *United States v. Caceres*, 440 U.S. 741, 751–52 (1979) (finding violations of agency regulations do not raise constitutional questions).

Second, to the extent Plaintiff premises his Eighth Amendment claim solely on Defendant Garcia's failure to prevent a "potential danger" posed by a known dangerous inmate, he fails to state a plausible claim for relief. While prison officials must "take reasonable measures to guarantee the safety of the inmates," they are not constitutionally liable for every inmate-on-inmate attack. *Farmer v. Brennan*, 511 U.S. 825, 832, 834 (1994). Indeed, the duty to "take reasonable measures to guarantee the safety of the inmates," *id.* at 832, does not make prison officials "the guarantor[s] of [inmates'] safety," *Purcell ex rel. Est. of Morgan v. Toombs Cnty., Ga.*, 400 F.3d 1313, 1321 (11th Cir. 2005).

To state a plausible Eighth Amendment claim, a plaintiff-inmate must allege the prison official was "subjectively aware" of a "substantial risk of serious harm" but failed to respond "reasonably to the risk." *Carter v.*

*Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003). "The known risk of injury must be a 'strong likelihood, rather than a mere possibility' before an official's failure to act can constitute deliberate indifference." *Brown v. Hughes*, 894 F. 2d 1533, 1537 (11th Cir. 1990). A prison official's negligence does not equate to deliberate indifference. *Id.* ("Merely negligent failure to protect an inmate from attack does not justify liability under [§] 1983.").

A court's consideration of whether there was a strong likelihood, as opposed to a "mere possibility," of an injury occurring cannot be based on "hindsight bias." *Brooks v. Warden*, 800 F.3d 1295, 1301 (11th Cir. 2015). The complained-of condition—violence among inmates—must have resulted in so many incidents or injuries that such incidents or injuries were "the norm or something close to it." *Marbury v. Warden*, 936 F.3d 1227, 1234 (11th Cir. 2019) (quoting *Purcell*, 400 F.3d at 1322)). Thus, to state a plausible claim, an inmate must allege more than a "generalized awareness of risk." *See Carter*, 352 F.3d at 1349; *see also Marbury*, 936 F.3d at 1234 ("In general, a plaintiff must show 'more than a generalized awareness of risk' to make out a deliberate-indifference claim.").

For instance, in *Carter*, the Eleventh Circuit affirmed summary judgment in favor of the defendants because the evidence showed only that they were aware of an inmate's "generally problematic nature" before that

7

inmate attacked his cellmate. 352 F.3d at 1349. The defendants knew the plaintiff's cellmate had a "well-documented history of prison disobedience and had been prone to violence." *Id*. Additionally, the defendants knew the plaintiff's cellmate was "roaming his cell like a 'caged animal,'" and the plaintiff complained that his cellmate was "acting crazy." *Id*. The court held as follows with respect to the subjective knowledge component of the Eighth Amendment claim:

> Defendants arguably should have placed Plaintiff elsewhere but "merely negligent failure to protect an inmate from attack does not justify liability under section 1983...." *Brown v. Hughes,* 894 F.2d 1533, 1537 (11th Cir. 1990). Defendants only possessed an awareness of [the cellmate's] propensity for being a problematic inmate; to find Defendants sufficiently culpable would unduly reduce awareness to a more objective standard, rather than the required subjective standard set by the Supreme Court. Such a generalized awareness of risk in these circumstances does not satisfy the subjective awareness requirement.

*Id.* at 1350.

In *Brooks*, the court held the plaintiff failed to state a plausible deliberate indifference claim when an inmate in an adjacent cell attacked him within a month of having threatened him. 800 F.3d at 1298. The plaintiff reported the threats before the attack, "but no action was taken." *Id*. By happenstance, all cell doors in the dorm inadvertently opened at the same time one day, resulting in a riot during which the inmate injured the plaintiff so badly that he required treatment at an outside hospital. *Id*. at 1298–99. The

court concluded the plaintiff had alleged only the "mere possibility" that he could be attacked by virtue of all cell doors inadvertently opening at the same time, even though the doors had malfunctioned in the past. *Id.* at 1301. *See also Purcell*, 400 F.3d at 1318, 1322 (holding evidence of "several inmate-on-inmate fights" over several months before the incident did not establish "that serious inmate-on-inmate violence was the norm or something close to it").

Accepting as true that Defendant Garcia knew Inmate Gunn had a violent past with a history of disciplinary infractions, and further accepting that Defendant Garcia did not follow prison policy when opening Plaintiff's cell door, Plaintiff alleges only a "mere possibility" that he could have been injured by another inmate. *See Brooks*, 800 F.3d at 1301. He certainly does not allege facts that would permit the inference "that serious inmate-on-inmate violence was the norm or something close to it." *See Purcell*, 400 F.3d at 1322. On the contrary, he mentions no prior similar incidents of inmate-on-inmate violence of which Defendant Garcia was aware. *See* Compl. at 6–7.

Plaintiff also does not allege that Defendant Garcia opened his cell door knowing of Inmate Gunn's plans and intending for him to be attacked. *See id.* As such, accepting as true that Defendant Garcia "allowed" the incident to occur given he remotely opened Plaintiff's cell door in contravention of prison policy, such conduct, as alleged, constitutes negligence, not deliberate

9

indifference to a known risk of serious harm. An official's "failure to follow procedures does not, by itself, rise to the level of deliberate indifference because doing so is at most a form of negligence." *Taylor v. Adams*, 221 F.3d 1254, 1259 (11th Cir. 2000).

Plaintiff demonstrates at most that Defendant Garcia "only possessed an awareness of [another inmate's] propensity for being a problematic inmate," which alone does not permit the "inferential leap" that Defendant Garcia had the culpable state of mind under the stringent deliberate indifference standard. *See Carter*, 352 F.3d at 1350; *see also Brooks*, 800 F.3d at 1301. The facts Plaintiff alleges are even less compelling than those in *Carter* and *Brooks* because Plaintiff does not allege Inmate Gunn previously threatened him or engaged in recent behavior that would have put officers on notice that he would attack another inmate. *See* Compl. at 6–7. In fact, in his grievance, Plaintiff concedes he did not know Inmate Gunn before the attack and never "had any problems with [that inmate] in the past." *Id.* at 20. Even if Defendant Garcia knew the nature and extent of Inmate Gunn's violent history or knew that inmates in Plaintiff's dorm generally had disciplinary problems, Plaintiff alleges only a "generalized awareness of risk," which is insufficient to state a claim for deliberate indifference. *See Marbury*, 936 F.3d at 1234.

Prisons are known to be dangerous places, with some inmates being more dangerous than others and, therefore, housed in special units with heightened security (such as the CMU). *See Farmer*, 511 U.S. at 858 (Thomas, J. concurring) ("Prisons are necessarily dangerous places; they house society's most antisocial and violent people in close proximity with one another."). Violent incidents among inmates are "inevitable" in such an environment. *Id.* But the constitution does not mandate prison officials foresee and prevent all "potential danger[s]," as Plaintiff suggests. *See* Pl. Resp. at 2; *see also* Compl. at 6–7. Rather, prison officials have a constitutional obligation to guarantee inmates' safety through "reasonable measures." *See Farmer*, 511 U.S. at 832.

Plaintiff's allegations, accepted as true and liberally construed, do not permit the reasonable inference that Defendant Garcia was deliberately indifferent to his safety. Accordingly, Defendant Garcia is entitled to qualified immunity for Plaintiff's failure to state a plausible Eighth Amendment claim.[2]

Accordingly, it is now

**ORDERED**:

1. Defendant Garcia's Motion to Dismiss (Doc. 47) is **GRANTED**.

---

[2] Finding Plaintiff fails to state a plausible claim, the Court will not address Defendant Garcia's other arguments.

2.  The **Clerk** shall enter judgment in favor of Defendant Garcia, terminate any pending motions as moot, and close the case.

**DONE AND ORDERED** at Jacksonville, Florida, this 24th day of October 2024.

_____
BRIAN J. DAVIS
United States District Judge

Jax-6
c:
Jonathan Lopez
Counsel of Record